**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| MOSHE ZEINES,<br><br>Plaintiff,<br><br>v.<br><br>RABBI YAAKOV BLEJER, RABBI ARYEH LEIB BENSINGER, RABBI MARK ROSENBERG, and DAVID KATZ *a/k/a* DOV KATZ *a/k/a* DOVIE KATZ,<br><br>Defendants. | Civil Action No. 25-13335 (JXN) (LDW)<br><br><br>**OPINION** |

**NEALS**, District Judge

Before the Court is Defendants Aryeh Leib Bensinger, Mark Rosenberg, and David Katz's (collectively, "Individual Defendants") motion to dismiss Plaintiff Moshe Zeines's ("Plaintiff") First Amended Complaint pursuant to Federal Rules of Civil Procedure[1] 12(b)(2), 12(b)(3), and 12(b)(6), and, alternatively, to transfer this action to the U.S. District Court for the Southern District of Florida ("Southern District of Florida") or for a more definite statement under Rule 12(e) as to any surviving claim, and to strike impermissible injunctive and prior restraint relief under Rule 12(f). (ECF No. 13.) Defendants Rabbi Yaakov Blejer and North Miami Beach Kollel, Inc. (collectively, "Kollel Defendants") filed a brief joining the Individual Defendants' motion to transfer and/or to invoke the *Doctrine of Forum Non Conveniens*. (ECF No. 17.) Plaintiff filed a consolidated Opposition in response (ECF No. 39), and the Individual Defendants replied in further support (ECF No. 41). Also before the Court is Defendant Congregation Torah Ve-Emunah, Inc.'s ("CTVE" together with the Individual Defendants and the Kollel Defendants,

---

[1] "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

"Defendants") motion to dismiss Plaintiff's First Amended Complaint pursuant to Rules 12(b)(6) and 12(b)(2). (ECF No. 49.) Plaintiff opposed the motion (ECF No. 56), and CTVE replied in further support (ECF No. 57).[2] The Court has carefully reviewed the First Amended Complaint and the parties' submissions and decides this matter without oral argument pursuant to Rule 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court finds that venue in this District is improper and will transfer this matter to the Southern District of Florida. Accordingly, the Individual Defendants' motion to dismiss is **GRANTED** *in part* and **DENIED** *in part*, and CTVE's motion is **DENIED** *without prejudice*.

## I.     BACKGROUND

### A.     Statement of Facts[3]

This action concerns Defendants' alleged coordinated actions in Florida in early 2022 to inflict reputational, legal, and emotional harm upon Plaintiff.

Plaintiff currently resides in New Jersey but, at all relevant times, maintained an active lease and tenancy in North Miami Beach, Florida, with a reasonable expectation to remain there. (First Amended Complaint ("FAC") ¶¶ 7, 94, ECF No. 9.) Defendants are all Florida residents. (*Id*. ¶¶ 8–14.)[4]

---

[1] On March 10, 2026, Plaintiff filed a letter noting that CTVE filed its reply brief one day after the Local Civil Rule 7.1(d)(3) deadline, that the reply contained several arguments not raised in its opening brief, and that, if the Court intended to consider the reply, Plaintiff be allowed to submit a sur-reply brief addressing those new points. (ECF No. 58.) In light of the Court's disposition of this matter, Plaintiff's request to file a sur-reply is denied without prejudice.

[3] When reviewing a motion to dismiss, a court accepts as true all well-pleaded facts in the complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

[4] CTEV and North Miami Beach Kollel, Inc. ("NMB Kollel") are religious corporations incorporated in and headquartered in North Miami Beach, Florida. (*Id*. ¶¶ 13,14.) Yaakov Blejer ("Blejer") is an individual residing in North Miami Beach, Florida, and serves as the Rabbi of the NMB Kollel. (*Id*. ⁋ 8.) Aryeh Leib Bensinger ("Bensinger") is an individual residing in North Miami Beach, Florida, and serves as the Rabbi of CTEV. (*Id*. ⁋ 9.) Mark Rosenberg ("Rosenberg") is an individual residing in Florida and is affiliated with the MDPD as a chaplain. (*Id*. ⁋ 10.) David Katz ("Katz") is an individual residing in Florida. (*Id*. ⁋ 11.)

In November 2021, Plaintiff was arrested in connection with a criminal matter pending in Ocean County, New Jersey, and was subsequently released subject to pretrial monitoring with certain conditions, including restrictions on unsupervised contact with minors and on internet use. (*Id.* ¶ 15.) In December 2021, Plaintiff relocated to South Florida pending trial. (*Id.* ¶ 16.)

Plaintiff alleges that in or around January or February 2022, Bensinger called Plaintiff to "discuss rumors about him," prompting Plaintiff to terminate the call. (*Id.* ¶ 17.) Later that day, a police officer visited Plaintiff's residence in North Miami Beach, Florida, and informed him that he "was not welcome in any local synagogue and would be arrested if [he] entered any synagogue in town." (*Id.*) Between February 3 and 28, 2022, Defendants Blejer, Bensinger, and Rosenberg filed police reports with the MDPD, alleging that Plaintiff violated the terms of his pretrial monitoring release by engaging in unsupervised contact with a minor by obtaining his landlord's Wi-Fi code and installing his own internet connection, and noted that Bensinger and five other rabbis deemed Plaintiff's presence "alarming and concerning." (*Id.* ¶¶ 18–20.) On February 10, 2022, Defendants' allegations regarding Plaintiff's unauthorized internet access, which the MDPD found baseless, were transmitted to the Ocean County Prosecutor's Office, risking Plaintiff's pretrial release conditions. (*Id.* ⁋ 22.) To prevent adverse consequences, Plaintiff's attorney obtained an affidavit from Plaintiff's landlord's father to refute Defendants Bensinger and Rosenberg's false internet access claim. (*Id.*) Defendants communicated the nature of the pending allegations against Plaintiff to their Orthodox Jewish community in South Florida and to Plaintiff's landlord. (*Id.* ¶¶ 24–35.)

Plaintiff further claims that in March 2022, Bensinger, as Rabbi of CTVE, authored and widely disseminated a letter on the organization's letterhead, bulletin board, and membership list to members of the Orthodox Jewish community in South Florida warning them to "stay away"

from Plaintiff and stating that there were "efforts to remove him from the community." (*Id*. ¶¶ 27, 29.) Similarly, Blejer, as Rabbi of NMB Kollel, used his position to spread false rumors about Plaintiff within the Kollel community and to recruit congregants and associates, David Wechsler and Moshe Price, to participate in or encourage the filing of false police reports. (*Id*. ℗ 28.) Rosenberg, in his capacity as chaplain for the MDPD, exploited that affiliation to lend undue credibility to the false report, contributing to the perception of credibility and the Ocean County Prosecutor's reliance on it. (*Id*. ℗ 33.) Katz, acting under the direction or request of Bensinger, Blejer, and/or Rosenberg as part of a coordinated effort, directly contacted Plaintiff's landlord to have Plaintiff evicted for false and retaliatory reasons. (*Id*. ℗ 35.) Although Plaintiff's landlord refused to evict him, Defendants' actions caused Plaintiff anxiety and further disruption, led to unnecessary court proceedings and damage to Plaintiff's legal standing in New Jersey, and, in or about March 2022, culminated in his forced relocation to New Jersey from North Miami Beach, Florida. (*Id*. ¶ 36.)

Plaintiff alleges,

The wrongful acts alleged in this Complaint *occurred almost entirely in Florida, including in Miami-Dade County*, where Defendants filed false police reports, orchestrated a synagogue ban, contacted Plaintiff's landlord, and disseminated defamatory and stigmatizing statements.

(*Id.* ℗ 37 (emphasis added).) Plaintiff further alleges,

*Because the alleged tortious conduct and the resulting harm to Plaintiff's housing, reputation, and emotional well-being all occurred in Florida,* Florida law applies to Plaintiff's state-law tort claims, including Florida's four-year statute of limitations for abuse of process, tortious interference, conspiracy, and intentional infliction of emotional distress.

(*Id.* (emphasis added).)

### B. Procedural History

On July 15, 2025, Plaintiff filed an initial Complaint against Belejer, Bensinger, Rosenberg, and Katz. (Compl., ECF No. 1.) Plaintiff filed the First Amended Complaint on September 28, 2025, adding two institutional defendants, CTVE and NMB Kollel asserting the following claims: (1) Count One: Abuse of Process (against all Defendants), (FAC ¶¶ 39–52); (2) Count Two: Defamation (against Bensinger, CTVE, NMB Kollel, and, to the extent applicable, Blejer), (*id.* ¶¶ 53–62); (3) Count Three: Intentional Infliction of Emotional Distress ("IIED") (against all Defendants), (*id.* ¶¶ 63–66); (4) Count Four: Tortious Interference with Judicial Proceedings (against Blejer, Bensinger, Rosenberg, CTVE, NMB Kollel), (*id.* ¶¶ 67–70); (5) Count Five: Tortious Interference with Prospective Economic Advantage (against all Defendants), (*id.* ¶¶ 71–78); (6) Count Six: Civil Conspiracy (against all Defendants), (*id.* ¶¶ 79–91); (7) Count Seven: Tortious Interference with Prospective Economic Advantage (against All Defendants), (*id.* ¶¶ 92–102); (8) Count Eight: Invasion of Privacy (False Light) (against All Defendants), (*id.* ¶¶ 103–110); and (9) Count Nine: Institutional Liability (*Respondeat Superior*/Ratification) Invasion of Privacy (False Light) (against CTVE, and NMB Kollel), (*id.* ¶¶ 111–116).

On October 28, 2025, the Individual Defendants filed a motion to dismiss the First Amended Complaint for failure to state a claim pursuant to Rule 12(b)(6), for lack of personal jurisdiction pursuant to Rule 12(b)(2), and for improper venue pursuant to Rule 12(b)(3), and alternatively, to transfer the matter to the Southern District of Florida pursuant to 28 U.S.C. § 1404(a), or for a more definite statement under Rule 12(e) as to any surviving claim, and to strike impermissible injunctive and prior restraint relief under Rule 12(f). (Indiv. Defs.' Mot., ECF. No.

13.)[5] On November 14, 2025, the Kollel Defendants filed a brief joining the Individual Defendants' motion with respect to the request to transfer and/or for *Forum Non Conveniens*. (Kollel Defs.' Br., ECF No. 17.) On December 16, 2025, Plaintiff filed a consolidated opposition in response to the Individual Defendants' motion and the Kollel Defendants' brief (Pl.'s First Opp'n, ECF No. 39), and on January 13, 2026, the Individual Defendants replied in further support. (Indiv. Defs.' Reply, ECF No. 41.) On February 16, 2026, CTVE filed a separate motion to dismiss Plaintiff's First Amended Complaint pursuant to Rules 12(b)(6) and 12(b)(2) for failure to state a claim and for lack of personal jurisdiction. (CTVE Mot., ECF No. 49.) Plaintiff opposed the motion (Pl.'s Second Opp'n, ECF No. 56), and CTVE replied in further support (CTVE Reply, ECF No. 57). The motions are now ripe for the Court to decide.

## II.   <u>LEGAL STANDARD</u>[6]

An action may be dismissed for improper venue under Rule 12(b)(3). Under the federal venue statute, venue is proper in the following districts:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

---

[5] Plaintiff filed several motions between November 6, 2026, and February 10, 2026 (*see* ECF Nos. 16, 21, 23, 44, 51), which were subsequently denied or terminated by United States Magistrate Judge Leda Dunn Wettre (*see* ECF Nos. 32, 33, 50, 54).

[6] Because this Court does not reach the merits of the motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), for lack of personal jurisdiction pursuant to Rule 12(b)(2), these standards are omitted.

A case can be transferred under either 28 U.S.C. § 1404(a) or § 1406(a). *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 878 (3d Cir. 1995). To determine which provision applies, the court first ascertains whether venue is proper in the original forum. *See Lafferty v. St. Riel*, 495 F.3d 72, 78 (3d Cir. 2007). Section 1404(a) governs transfer when venue is proper in both the original forum and the requested forum. *See* 28 U.S.C. § 1404(a) ("[A] district court may transfer any civil action to any other district ... where it might have been brought."). Conversely, § 1406(a) governs transfer when venue in the original forum is improper. *See* 28 U.S.C. § 1406(a). Under § 1406(a), a court may transfer or dismiss a case *sua sponte* if it determines that venue is improper. *See Decker v. Dyson*, 165 F. App'x 951, 954 n.3 (3d Cir. 2006).

## III.   **DISCUSSION**

After careful review, the Court finds that the District of New Jersey is an improper venue and that the Southern District of Florida is a proper venue. Accordingly, transfer is appropriate.

### A.   **Motion to Dismiss for Improper Venue or to Transfer Venue**

The Individual Defendants argue that venue is improper in this District under Rule 12(b)(3). (Indiv. Defs.' Mot. 3–4.) Alternatively, the Individual and Kollel Defendants argue that this case should be transferred pursuant to 28 U.S.C. § 1404(a). (*Id.*; Kollel Defs.' Mot. 7–18.) However, § 1404(a) "only applies when a case was originally filed in a proper venue." *Howmedica Osteonics Corp. v. DJO Glob., Inc.*, No. 16-2330, 2017 WL 1136671, at *4 (D.N.J. Mar. 27, 2017) (citing *Jumara*, 55 F.3d at 878). As discussed further below, because venue in this District is improper, the Court will instead analyze transfer under § 1406(a).

#### i.   *The District of New Jersey is an Improper Venue*

The Court first analyzes whether Plaintiff's choice of venue is proper. To determine the propriety of Plaintiff's venue choice, the Court analyzes the three categories in the federal venue

statute, 28 U.S.C. § 1391(b). Under that analysis, "[i]f the case falls into at least one of the Section 1391(b) categories, then venue is proper .... If it does not, then venue is improper and the case may be transferred." *Monello Landscape Indus., L.L.C. v. Hatch Landscape & Design, Inc.*, No. 16-5803, 2018 WL 2134058, at *3 (D.N.J. May 9, 2018).

Here, none of the three § 1391(b) categories point to the District of New Jersey. First, for the venue to be proper under § 1391(b)(1), all Defendants would have to reside in New Jersey. Here, Defendants are all Florida residents (*see* FAC. ¶¶ 8–14); therefore, § 1391(b)(1) does not apply.

Second, under § 1391(b)(2), the Court finds that a "substantial part of the events" giving rise to Plaintiff's claim occurred outside the District of New Jersey. *See* 28 U.S.C. § 1391(b)(2). To determine whether § 1391(b)(2) applies, courts look to the nature of the dispute and "the location of those events or omissions giving rise to the claim." *Bockman*, 459 F. App'x at 161 (quoting *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994)). "Events or omissions that might only have some tangential connection with the dispute in litigation are not enough." *Cottman*, 36 F.3d at 294. Here, Plaintiff asserts that venue is proper "because a substantial part of the events giving rise to the claims - namely, interference with Plaintiff's criminal case and court appearance - occurred in New Jersey." (FAC ¶ 5; *see also* Pl.'s First Opp'n Br. 24–28.) However, Plaintiff's First Amended Complaint confirms that a substantial part of the events giving rise to Plaintiff's claims, i.e. the allegedly tortious conduct, occurred in Florida: "[t]he wrongful acts alleged in this Complaint occurred almost entirely in Florida, including in Miami-Dade County, where Defendants filed false police reports, orchestrated a synagogue ban, contacted Plaintiff's landlord, and disseminated defamatory and stigmatizing statements." (*Id*. ¶ 37.) Further, Plaintiff's reliance on *Calder v. Jones*, 465 U.S. 783 (1984), does not cure the venue

8

defect. *Calder* concerns personal jurisdiction, whereas venue is governed by § 1391(b).[7] The tortious conduct alleged—the filing of the allegedly false police report—occurred in Florida. Miami-Dade authorities investigated the report in Florida, found it baseless, and Plaintiff obtained an affidavit from his Florida landlord to refute it. (*Id*. ¶ 22–23.) Although the report was allegedly transmitted to the Ocean County Prosecutor's Office in New Jersey, Plaintiff does not allege that his New Jersey pretrial conditions were modified, revoked, or otherwise compromised. Thus, any New Jersey connection is, at most, an attenuated consequence of conduct occurring in Florida, not a substantial event or omission giving rise to the claims. *See Cottman*, 36 F.3d at 294–95. Therefore, the Southern District of Florida is the proper venue under § 1391(b)(2), not the District of New Jersey. *See Akhter v. Mooney*, No. 20-15041, 2023 WL 3764627, at *2 (D.N.J. June 1, 2023).

---

[7] Plaintiff asserts that "the record, the attached exhibits, and Defendants' own writings establish that their conduct was not directed at Florida at all. It was intentionally aimed at New Jersey, for the purpose of weaponizing a New Jersey judicial proceeding." (*Id*. at 15.) As a means of establishing specific jurisdiction, the Calder effects test applies when an intentional tort is alleged. *O'Connor v. Sandy LaNE Hotel Co., Ltd.*, 496 F. 312, 317 n. 2 (3d Cir. 2007). The *Calder* effects test requires a plaintiff to show that:

> (1) The defendant committed an intentional tort; (2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; (3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity[.]

*IMO Industries*, *Inc. v. Kiekert AG,* 155 F.3d 254, 265–66 (3d Cir. 1998) (footnote omitted); *Hasson v. FullStory, Inc.*, 114 F.4th 181, 187 (3d Cir. 2024) (citing *Remick v. Manfredy*, 238 F.3d 248, 258 (3d Cir. 2001)). If a plaintiff satisfies these three elements, known collectively as the "effects test," the plaintiff can demonstrate a court's jurisdiction over a defendant even when the defendant's "contacts with the forum alone ... are far too small to comport with the requirements of due process" under our traditional analysis. *Id.* at 259; *see also Marten v. Godwin,* 499 F.3d 290, 297 (3d Cir. 2007).

Plaintiff's reliance on *Calder* does not cure the venue defect, as *Calder* concerns personal jurisdiction, whereas venue is governed by § 1391(b). Further, *Calder* does not control the Court's analysis under §1406(a), which applies when venue is improper and authorizes dismissal or transfer "in the interest of justice." Even in full consideration of Defendants' alleged interaction with Plaintiff's criminal proceeding in New Jersey, such interaction was at best incidental since the operative facts of the lawsuit occurred in Florida rather than Plaintiff's chosen forum. Accordingly, the mere fact that a plaintiff suffers harm in the forum state is not enough to give rise to personal jurisdiction in that state. *See Marten*, 499 F.3d at 297 ("Even if a defendant's conduct could cause foreseeable harm in a given state, such conduct does not necessarily give rise to personal jurisdiction in that state.").

Finally, the Court need not consider the third prong of the venue statute because there is a "district in which [this] action may otherwise be brought": the Southern District of Florida; 28 U.S.C. § 1391(b)(3); *W. Bend Ins. Co. v. United States of Am. Chess Fed'n*, No. 24-11445, 2025 WL 2653767, at *5 (D.N.J. Sept. 16, 2025) (quoting *Konica Minolta, Inc. v. ICR Co.*, No. 15-1446, 2015 WL 9308252, at *5 (D.N.J. Dec. 22, 2015) ("§ 1391(b)(3) is moot in this case, as the action may be brought [elsewhere].")). Accordingly, Plaintiff's choice of the District of New Jersey is improper under any of the § 1391(b) categories. Next, the Court turns to whether this case should be dismissed or transferred.

### ii.   The Southern District of Florida Is a Proper Venue

Having decided that venue is improper in this District, the Court must determine whether to dismiss the case or transfer it pursuant to § 1406. *Jumara*, 55 F.3d at 878. Section 1406(a) is intended to preserve claims that might otherwise be barred by the rigid application of dismissal rules. *Lafferty*, 495 F.3d at 79 (citation omitted). "Transfer is generally more in the interest of justice than dismissal." *Binks v. US Tech Sols.*, No. 20-02969, 2020 WL 6701470, *3 (D.N.J. Nov. 12, 2020) (citations omitted); *see also Bockman*, 459 F. App'x at 162 n.11 (citation omitted) ("Transfer in lieu of dismissal is generally appropriate to avoid penalizing a plaintiff by 'time-consuming and justice-defeating technicalities.'"). "A Court transferring venue under § 1406 must simply determine a venue in which the action originally could have been brought that serves the interest of justice." *de Rojas v. Trans States Airlines, Inc.*, 204 F.R.D. 265, 269 (D.N.J. 2001).

Because this action could have been brought in the Southern District of Florida, the Court concludes that the interests of justice favor transfer rather than dismissal. *See* 28 U.S.C. § 1406(a). As the Supreme Court has explained, § 1406(a) was enacted to avoid the "time-consuming and justice-defeating technicalities" that may result from dismissing an action filed in an improper

forum where transfer would permit the case to proceed on the merits. *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466–67 (1962); *see also Lafferty*, 495 F.3d at 77–78 (recognizing that § 1406(a) authorizes transfer, rather than dismissal, when doing so serves the interest of justice). Here, the Southern District of Florida may exercise personal jurisdiction over Defendants, all of whom are Florida residents. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011); *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Transfer will also promote the efficient resolution of this action because a substantial part, if not all, of the events giving rise to this action, including the police contacts, the community letter, and the landlord outreach, occurred in Florida, Defendants are located there, and the relevant witnesses and evidence are reasonably expected to be located there as well. *See Lafferty*, 495 F.3d at 77–78; *Goldlawr*, 369 U.S. at 466–67. In addition, Plaintiff himself anticipates the application of Florida law, further supporting transfer to a federal court in Florida. By contrast, New Jersey's only connection is Plaintiff's residence and the background New Jersey criminal charges, all of which are not the actionable events here. Accordingly, rather than dismissing the action for improper venue under Rule 12(b)(3), the Court finds that transferring this matter to the Southern District of Florida pursuant to § 1406(a) will best serve the interests of justice.

In light of the transfer, the Court declines to address Defendants' arguments for dismissal under Rules 12(b)(2) and 12(b)(6). These arguments are denied without prejudice to Defendants' right to reassert them in the transferee court, where they can be more appropriately resolved.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, the Individual Defendants' motion to dismiss for improper venue or, in the alternative, to transfer (ECF No. 13) is **GRANTED,** and this action is **TRANSFERRED** to the Southern District of Florida. Defendants' remaining arguments for dismissal under Rules 12(b)(2) and 12(b)(6), including CTVE's motion to dismiss (ECF No. 49), are **DENIED** *without prejudice* to Defendants' right to reassert them in the transferee court, where they can be more appropriately resolved. An appropriate Order accompanies this Opinion.

**DATED: 6/30/2026**

_____
**JULIEN XAVIER NEALS**
**United States District Judge**

12